IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSEPH COUVILLION, KESHA MEGAN JACKSON, ASHLEY KIRBY, KATY POLANCO, ELIZABETH POWERS, and WILLIAM STOVER,<br><br>    Plaintiffs,<br><br>                  v.<br><br>MIKE THE MECHANIC, INC.; MIKE THE MECHANIC – ROSWELL, INC.; MIKE THE MECHANIC – TOWNE LAKE, INC.; MIKE THE MECHANIC – KENNESAW, INC.; MIKE THE MECHANIC – HOLLY SPRINGS, INC.; MIKE THE MECHANIC – BARRETT PARKWAY, INC.; and MICHAEL A. PECORARO,<br><br>    Defendants. | Civil Action No.<br>1:21-cv-00393-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendants' summary judgment motion [ECF 69], as well as Plaintiffs Kesha Megan Jackson and Elizabeth Powers's renewed motion to set aside default [ECF 67]. For the following reasons, both motions are **GRANTED in part** and **DENIED in part**.

**I.    Background**

This case arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA) for unpaid overtime wages claimed by Plaintiffs Joseph Couvillion, Kesha Megan Jackson, Ashley Kirby, Katy Polanco, Elizabeth Powers, and William

Stover.¹ Defendant Michael A. Pecoraro filed a counterclaim against Powers (related to a promissory note) and Defendant Mike the Mechanic, Inc. (MTMI) filed a counterclaim against Jackson (for conversion).² Defendants now seek summary judgment in their favor on Plaintiffs' claims and on Pecoraro's counterclaim against Powers.³

## II. Motion to Set Aside Default

The counterclaims against Powers and Jackson were set forth in Defendants' answer, in which MTMI also asserted a counterclaim against former Plaintiff Mary Allen.⁴ Powers, Jackson, and Allen failed to respond to the counterclaims and the Clerk entered default against them.⁵ Defendants then moved for a default judgment.⁶ Jackson and Allen—but not Powers—moved to set aside the entry of default.⁷ The Court denied without prejudice both the motion to set aside and the

---

1. Former lead Plaintiff Mary Allen and Defendants settled their claims. ECF 63; ECF 66.
2. ECF 17, at 14–16, 17–18.
3. ECF 69.
4. ECF 17, at 14–18.
5. Mar. 19, 2021 D.E.
6. ECF 26.
7. ECF 27.

motion for default judgment.[8] Subsequently, Jackson and Powers filed a "renewed" motion to open the default.[9] Defendants oppose this renewed motion because Powers does not contest the counterclaim against her and Jackson has not shown "good cause."[10]

The Court may set aside a default or a default judgment for good cause. Fed. R. Civ. P. 55(c). There is a strong policy in this circuit to decide cases on their merits rather than through default. *Worldstar Commc'ns Corp. v. Feltman (In re Worldwide Web Sys., Inc.)*, 328 F.3d 1291, 1295 (11th Cir. 2003) (indicating this Circuit has "a strong policy of determining cases on their merits and we therefore view defaults with disfavor").

### A.   Jackson

The Court concludes that Jackson has shown good cause for opening the default against her. After Defendants moved for a default judgment, Jackson moved quickly to set aside the entry of default and filed a proposed answer and

---

[8]   Jan. 5, 2022 D.E.

[9]   ECF 67. A second "renewed" motion was filed at ECF 68, but appears to be substantively identical to the motion filed at ECF 67. The latter motion [ECF 68] is therefore **DENIED as moot**. Both motions were also purportedly filed on behalf of Allen, who had by that point already settled. ECF 66.

[10]  ECF 71.

supporting declaration refuting the allegations against her.[11] Defendants have long been aware that Jackson contests the counterclaim. They will suffer no prejudice from having to litigate that cause of action on its merits. *Ochoa v. Principal Mut. Ins. Co.*, 144 F.R.D. 418, 420 (N.D. Ga. 1992) (indicating that courts consider "whether the party has a meritorious defense, how promptly the party acted to cure the default, whether the default was willful, and whether the non-defaulting party would be prejudiced" in assessing the existence of good cause) (citation omitted). Moreover, "[e]ntry of judgment by default is a drastic remedy which should be used only in extreme situations." *Fortson v. Best Rate Funding, Corp.*, 602 F. App'x 479, 481 (11th Cir. 2015) (quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). This is not such an extreme situation. Accordingly, the motion to set aside is granted as to Jackson.

B.   **Powers**

Powers, however, is differently situated. She admits all of the allegations in the counterclaim.[12] This is why she did not join the initial motion to set aside the entry of default.[13] A default entered pursuant to Rule 55(a) constitutes an

---

11   ECF 27; ECF 27-1, at 11–14.

12   ECF 27, at 6; ECF 75, ¶¶ 14–17.

13   ECF 27-1, at 2.

admission of all well-pleaded factual allegations contained in a complaint. *Beringer v. Hearshe, Kemp, LLC*, No. 1:10-cv-1399-WSD-ECS, 2011 WL 3444347, at *2 (N.D. Ga. Aug. 8, 2011) (citations omitted). Whether the counterclaim's allegations are admitted by virtue of Powers's default or by opening the default to permit her to file her answer admitting all the allegations in the counterclaim makes little difference—Pecoraro is entitled to judgment in his favor either way. The Court therefore declines to open the default against Powers. Pecoraro is entitled to summary judgment on his counterclaim against Powers as to liability.

### III. Summary Judgment Motion

#### A. Applicable Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. *Id.* at 324. In determining whether a genuine issue of material fact

exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999).

### B.     Plaintiffs' Claims

In relevant part, the FLSA requires employers to pay overtime of at least one-and-one-half times the regular rate to employees working more than 40 hours a week. 29 U.S.C. § 207(a)(1). A claim for unpaid overtime wages has two elements: "(1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work." *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015).

However, several categories of employees are exempt from these FLSA requirements. 29 U.S.C. §§ 207, 213. The Supreme Court recently held that, "[b]ecause the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give them anything other than a fair (rather than a narrow) interpretation." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (internal punctuation omitted). Defendants argue that two exemptions are relevant here: the motor vehicle salesman/mechanic exemption and the administrative exemption.

### 1.     The Motor Vehicle Salesman/Mechanic Exemption

Under the FLSA's motor vehicle salesman/mechanic exemption, employers are not required to pay overtime to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment *primarily engaged in the business of selling such vehicles or implements to ultimate purchasers*." 29 U.S.C. § 213(b)(10)(A) (emphasis added). The Supreme Court has held that this exemption applies to service advisors, but the service advisors must work at an establishment that is primarily engaged in the business of selling automobiles, such as a car dealership. *Encino Motorcars*, 138 S. Ct. at 1138.

Defendants argue that this exemption applies to Couvillion and Stover.[14] The undisputed facts demonstrate that Couvillion was initially employed as an oil changer, then later as a service advisor.[15] As a service advisor, Couvillion discussed car repairs with customers, ordered car parts, cashed out customers, and had a key to open and close the shop.[16] Stover was employed by Defendants as

---

[14]  ECF 69-1, at 9, 13. Defendants also contend that the exemption applies to Jackson to the extent she performed service advisor duties. *Id.* at 12.

[15]  ECF 75, ¶¶ 18–19.

[16]  *Id.* ¶¶ 20–23.

both a "helper" and mechanic between June 1, 2019 and May 1, 2020.[17] He performed oil changes and brake jobs and sold vehicles for Defendants.[18]

However, nothing in Defendants' statement of undisputed material facts reflects that Defendants' primary business is selling vehicles (as opposed to, as their trade name implies, fixing vehicles).[19] This poses a fatal problem for their attempt to have the Court apply the salesman/mechanic exemption. At *best*, it is a disputed material fact whether Defendants are "primarily engaged in the business of selling [ ] vehicles or implements to ultimate purchasers."[20] Defendants are not entitled to summary judgment in their favor on Couvillion's or Stover's claims based on this exemption.

### 2.  The Administrative Exemption

Defendants argue that the administrative exemption applies to Couvillion, Jackson, Kirby, Polanco, and Powers.[21] Under this exemption, employers are not required to pay overtime if the employee is "employed in a bona fide executive,

---

17   *Id.* ¶ 47.

18   *Id.* ¶¶ 48–49.

19   ECF 69-2.

20   *See* ECF 77-1, ¶ 6 (Defendants disputing Plaintiffs' statement that Defendants are not primarily engaged in the business of selling vehicles).

21   ECF 69-1, at 6–13.

administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The administrative exemption applies to employees: (1) who are compensated not less than $684 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200.

Although all of these elements are in dispute to some extent, it is the third requirement that clearly precludes the entry of summary judgment in Defendants' favor since material facts are in dispute as to the responsibilities of and work performed by each Plaintiff to whom Defendants claim the exemption applies. Whether a person satisfies this third requirement depends on the facts of the particular employment situation. But in general, the "exercise of discretion and independent judgment" means "the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 551.202(a). This necessitates "more than the use of skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources." *Id.* § 541.202(e). The exemption does not encompass clerical or secretarial work, recording or tabulating data, or performing

other mechanical, repetitive, recurrent, or routine work. *Id.* § 541.202(e). The material facts concerning each relevant Plaintiff's employment responsibilities are discussed, briefly, in turn.

### i. Joseph Couvillion

The parties dispute whether Couvillion was a manager.[22] He had a key to "open and close the shop," but disputes that he had the authority to manage anyone or make financial decisions for the company.[23] Aside from the authority to order parts, there is not enough evidence that Couvillion had, as a matter of law, primary duties that included the exercise of independent judgment. This dispute of material fact precludes application of the administrative exemption to Couvillion. The undisputed evidence does not show that Couvillion's primary duties included the exercise of discretion and independent judgment with respect to matters of significance.

### ii. Kesha Megan Jackson

Jackson worked for Defendants from November 2018 until July 2020.[24] She managed vendor accounts, including working to ensure Defendants received the

---

[22] ECF 75, ¶¶ 24–25; ECF 77-1, ¶ 4.
[23] ECF 75, ¶¶ 23–25; ECF 77-1, ¶ 5.
[24] ECF 75, ¶ 32.

best prices on parts and that returned parts were properly credited.[25] Jackson also prepared reports, reconciled vendor accounts, and had customer service duties.[26] She performed audits on certain vendor accounts but the parties dispute the extent to which Jackson did this at Defendant Pecoraro's direction.[27] Although Jackson responded to customer reviews of Defendants' services online, the parties also dispute whether she did this at Pecoraro's direction.[28] Further, the parties dispute the extent to which Jackson made any significant decisions without direct supervision and approval from Pecoraro.[29]

The parties thus agree on Jackson's primary job duties but disagree as to the extent to which she exercised discretion and independent judgment in carrying out those duties. Further, Jackson disputes that she performed some of her primary duties without approval and supervision from Pecoraro or a shop manager.[30] This dispute is material to determining whether the administrative exemption applies as to Jackson.

---

[25] *Id.* ¶¶ 33–34.

[26] *Id.* ¶¶ 36, 40.

[27] *Id.* ¶ 38.

[28] *Id.* ¶ 39; ECF 77-1, ¶ 13.

[29] ECF 75, ¶¶ 37, 39; ECF 77-1, ¶¶ 12–13.

[30] ECF 75, ¶¶ 35, 37.

### *iii.* **Ashley Kirby**

Unlike the other Plaintiffs to whom Defendants want to apply the administrative exemption, there is no evidence Kirby even met the first requirement—that she made at least $684 per week.[31] Nor is there undisputed evidence that Kirby's primary duties included the exercise of discretion and independent judgment. She worked for Defendants from January 2019 to March 2020, performing administrative duties such as checking customers in and out, ensuring that Defendants were properly credited for parts returned to vendors, making spreadsheets, reconciling accounts, and interacting with vendors and customers.[32] This is the exact type of work that the exemption does *not* encompass. 29 C.F.R. § 541.202(e). In this context, the parties' dispute about whether Kirby made her own work schedule and the extent to which Pecoraro admitted he should have paid Kirby overtime is immaterial because it is clear the exemption does not apply to Kirby based on the undisputed facts.[33]

---

[31] *See generally* ECF 75; ECF 77-1.
[32] ECF 75, ¶¶ 42–45.
[33] ECF 77-1, ¶¶ 14, 16.

### iv. **Katy Polanco**

Polanco worked for Defendants between February 2019 and July 2020.[34] She did administrative work for two of the Defendant stores, including all invoicing and entering receivables and payables into QuickBooks.[35] As with Kirby, this is not the type of work covered by the administrative exemption. *Id*. The undisputed facts are insufficient for the Court to conclude that the exemption applies to Polanco.

### v. **Elizabeth Powers**

Powers worked for Defendants from December 6, 2018 until May 16, 2020.[36] Her job involved various accounting duties such as preparing Form 1099s for non-employee workers; reconciling vendor, credit card, and bank statements; and entering financial data into QuickBooks.[37] Powers also performed customer service-related duties.[38]

The parties dispute the rest of Powers's job duties. Defendants claim Powers referred to herself as the "controller," but Powers testified that Pecoraro directed

---

[34]  ECF 75, ¶ 26.

[35]  *Id.* ¶¶ 27–29; ECF 77-1, ¶ 8.

[36]  ECF 75, ¶ 1.

[37]  *Id.* ¶¶ 2–4.

[38]  *Id.* ¶ 5.

her to sign documents that way and that she did not make financial decisions for Defendants.[39] The parties also dispute whether Powers managed other employees.[40] Finally, Defendants claim that Powers performed "human resources services," including completing "write-ups" for employee infractions and responding to inquiries from the Georgia Department of Labor (the DoL) regarding unemployment insurance.[41] Powers asserts that she prepared these write-ups and responded to the DoL at Pecoraro's direction.[42]

Despite Defendants' assertions with regard to Powers's responsibilities, their motion for summary judgment argues that Powers and Polanco "performed nearly identical administrative services" for Defendants."[43] As with Polanco, then, material disputes of fact exist about whether Powers's duties and responsibilities qualify her for the administrative exemption because the extent to which she used discretion and independent judgment is unclear.

---

[39]  *Id.* ¶ 6; ECF 77-1, ¶¶ 1, 3.

[40]  ECF 75, ¶ 8; ECF 77-1, ¶ 2.

[41]  ECF 75, ¶¶ 9–10.

[42]  *Id.*

[43]  ECF 69-1, at 11.

### 3. Fluctuating Work Week & Gap Time

Finally, Defendants argue that, even if the salesman/mechanic and administrative exemptions do not apply, the Court should conclude as a matter of law that Plaintiffs' overtime claims are restricted to one-half their regular rate rather than one-and-one-half times the regular rates because of the "fluctuating workweek" (FWW) method.[44] The FWW method can be used by an employer when the employee works hours that fluctuate from week to week and his or her salary does not vary based on the number of hours worked. 29 C.F.R. § 778.114(a). Crucially, this method requires that "[t]he employee and the employer have a clear and mutual understanding that the fixed salary is compensation . . . for the total hours worked each workweek regardless of the number of hours." *Id.* § 778.114(a)(4).

Defendants argue the FWW method applies to Polanco and Powers.[45] But undisputed evidence of "a clear and mutual understanding" between Defendants and these two employees is lacking.[46] Nor is it clear that either employee was paid

---

[44] *Id.* at 5–6.

[45] *Id.* at 7–8, 11.

[46] ECF 75, ¶¶ 13, 31.

a salary that did not fluctuate based on the number of hours each worked during a particular week.[47]

With regard to Defendants' request for summary judgment as to "gap time" claims, it does not appear to the Court that any such claims have been asserted by Plaintiffs.[48] Defendants' argument in this regard is therefore disregarded.

## IV.   Conclusion

The renewed motion to set aside default [ECF 67] is **GRANTED** as to Jackson and **DENIED** as to Powers. The duplicative motion at ECF 68 is **DENIED as moot**. Defendants' motion for summary judgment is **GRANTED** only as to Pecoraro's counterclaim against Powers and **DENIED** in all other respects. The parties are **DIRECTED** to file a proposed Joint Pretrial Order within 30 days after entry of this order. As part of this Joint Pretrial Order, Pecoraro and Powers shall

---

[47]   *Id.*

[48]   *See generally* ECF 1; ECF 69-1, at 14.

indicate how they propose to proceed with regard to determining the award of damages on Pecoraro's counterclaim.

**SO ORDERED** this 29th day of September, 2022.

                                       Steven D. Grimberg
                        United States District Court Judge